Thimesch Law Offices
TIMOTHY S. THIMESCH, ESQ. (No. 148213)
GENE FARBER, ESQ. (No. 44215) – Of Counsel
158 Hilltop Crescent
Walnut Creek, CA 94597
Direct: (925) 588-0401
Facsimile: (888) 210-8868
tim@thimeschlaw.com
genefarber@gmail.com

Attorney for Plaintiff JEAN RIKER

PORTER │ SCOTT
A PROFESSIONAL CORPORATION
JENNIFER E. DUGGAN, ESQ. (No. 183833)
KAYLA C. VILLA, ESQ. (No. 255641)
350 University Ave., Suite 200
Sacramento, California  95825
Tel: 916-929-1481
Fax: 916-927-3706
jduggan@porterscott.com
kvilla@porterscott.com

DAN WILCOXEN, ESQ. (No. 54805)
WILCOXEN CALLAHAN MONTGOMERY & DEACON
2114 K Street
Sacramento, CA 95816
Tel: (916) 442-2777
Fax: (916) 442-4118
denisa@wilcoxenlaw.com

Attorneys for Defendants DISTILLERY; RONALD ALVERNAZ, and JAMES DUNPHY, JR.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN RIKER, | Case No. 2:08-CV-00450-MCE-JFM |
| Plaintiff, | Civil Rights |
| v. | **CONSENT DECREE JUDGMENT AND ORDER** |
| DISTILLERY; RONALD ALVERNAZ; JAMES DUNPHY, JR.; [JAMES DUNPHY, SR.], and DOES 1 through 50, Inclusive, | |
| Defendants. | |
| _____/ | |

## CONSENT DECREE JUDGMENT AND ORDER

1.   Plaintiff JEAN RIKER is a person with a disability whose condition requires the full time use of a wheelchair for

mobility.      Defendants  DISTILLERY;  RONALD  ALVERNAZ;  JAMES
DUNPHY, JR. are  the  owners,  operators  and  lessors  of  the
Distillery  located  at  2105-07  L  Street,  in  Sacramento,
California.

2.   Plaintiff JEAN RIKER filed this action for herself
and  all  other  similarly  situated  members  of  the  public  to
vindicate  their  alleged  rights  under  the  Americans  with
Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.,
and  corresponding  California  law,  including  enforcement  of
Title  24  of  the  California  Code  of  Regulations,  against
defendants DISTILLERY; RONALD ALVERNAZ; JAMES DUNPHY, JR., et
al. ("Defendants").

3.   Plaintiff  alleges  that  defendants  violated  these
statutes  by  failing  to  provide  full  and  equal  access  and
related  facilities,  including,  but  not  limited  to,  an
accessible  main  entrance,  accessible  public  restrooms,
accessible dining and counter facilities, and accessible paths
of  travel  connecting  each  of  the  foregoing  facilities.
Specific  identification  of  the  facilities  at  issue  and  their
alleged deficiencies has been identified by the parties through
an exchange of reports by consultants.  Defendants deny these
allegations and intend to continue their alleged policy of not
discriminating against the disabled

4.   Plaintiff  alleges  that  the  subject  building  has
undergone  construction  triggering  the  requirement  of  full
compliance with regulations in the altered areas, and that
further defendants could easily afford to makes its facilities
and  services  accessible  without  significant  difficulty  or

expense. Defendants deny that such construction has occurred and that not all remediations are readily achievable. However, in an effort to resolve the current dispute, the parties have entered a settlement agreement as set forth below.

**STIPULATIONS**

5. **Plaintiff's Qualified Disability.** Plaintiff is a qualified person with a physical disability. She requires the full time use of a wheelchair for mobility.

6. **Plaintiff's Residence and Status as Aggrieved and Potentially Aggrieved.** Plaintiff alleges she has standing, and that she lives less than two and half miles from the restaurant and the general downtown Sacramento area where it is situated, her church is located a few doors from the restaurant, she regularly dines out, and she has patronized the restaurant on several past occasions relative to the complaint. While the defendants do not admit all of the foregoing allegations, they agree that sufficient undisputed facts exist to support plaintiff's qualification as "aggrieved and potentially aggrieved" under the relevant statutes, and to support her standing under Article III of the U.S. Constitution.

7. **Ownership, Operation and Lease of the Restaurant.** Defendant RONALD ALVERNAZ is the owner-operator-lessee of the restaurant and building comprising the Distillery, which includes the scope of facilities identified in paragraph 12, below. Defendant JAMES DUNPHY, JR. is the owner-lessor of the building.

8. **Qualified Facilities** The Restaurant qualifies as a

"public accommodation" and "commercial facility" under all applicable statutes and regulations.

9. **Construction History.** While the parties disagree as to the extent of construction and required compliance, they stipulate that all facilities in issue have undergone sufficient and recent alteration and/or new construction to require at least some level of compliance with the requirements of the 1998 Edition of Title 24, Part 2, of the California Code of Regulations and the Americans With Disabilities Act Access Guidelines published in 1992.   The scope of facilities to be corrected under this Consent Decree Judgment and Order are identified in paragraph 12.

10. **Non-Admission of Liability.**  Defendants' agreements to remediate shall not constitute an admission that said remediations were required.   However, after considering the substantial expense and uncertainty associated with this litigation, defendants have agreed to the scope of remediations set forth in paragraph 12.

11. **No Other Actions.**  Plaintiff acknowledges that she has no actions at law or administrative proceedings currently pending against Defendants other than the action described in this Consent Decree.

12. **Scope of Facilities in Issue.**  The following are the facilities affected by this Consent Decree Judgment and Order:

(a)  The main entrance on the south side of the restaurant;

(b)  The dining table and bar counter facilities;

(c)  The path of travel to the public restrooms and

emergency exits;

      (d)  The public restrooms;

      (e)  The path of travel from the interior to the outdoor terrace facilities; and

      (f)  Access to ATM and vending machines.

All of the foregoing facilities are facilities available for use by patrons of the restaurant.

**JURISDICTION**

13.  The facts requisite to federal jurisdiction and venue are admitted.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 for the alleged violations of the ADA, 42 U.S.C. §§ 12101, et seq.  Article III jurisdiction is proper due to the plaintiff's continued exposure and use of the restaurant for dining.  Pendant jurisdiction of the state law claims arises from a common nucleus of fact and is proper.  Venue and intra-district jurisdiction is proper as the property in issue is located in Sacramento County.

14.  This Consent Decree Judgment and Order is contingent upon Court approval and acceptance of its terms, and the normal retention of jurisdiction to interpret and enforce terms.

15.  The Consent Decree Judgment and Order is further contingent upon the conservator of Defendant James Dunphy Jr. obtaining authorization from the Probate Court to enter this settlement agreement.  Should the Probate Court not provide this authority, this Consent Decree Judgment and Order shall not be effectuated.  The Petition to the Probate Court for authorization shall be filed with 21 days of execution of this

Order by counsel, approving the document "as to form". The parties agree to enter a stipulation and proposed order to stay all litigation while the probate petition is under submission, and to seek an extension of all pending dates and dates, including, but not limited to, those related to discovery and discovery motions, expert disclosures, dispositive motions, pretrial deadlines and filings, etc., as well as the date set for trial.

16. The parties agree to entry of this Consent Decree Judgment and Order in order to resolve the below listed allegations raised in the Complaint filed with this Court on February 26, 2008. Accordingly, they agree to the entry of this Consent Decree Judgment and Order without trial or further adjudication of any issues of fact or law concerning the issues specified herein.

WHEREFORE, the parties hereby agree and stipulate to the Court's entry of this Consent Decree Judgment and Order, which provides as follows:

**PARTIAL RESOLUTION OF ISSUES:**

17. This Consent Decree Judgment and Order shall be a full, complete, and final disposition and settlement of the below claims that have been or could have been alleged in the Complaint, including for injunctive relief, declaratory relief, statutory and compensatory damages, including any and all claims for personal and bodily injury. This Consent Decree Judgment and Order was negotiated and reached through negotiations between the parties. The Court shall retain

jurisdiction of this action to enforce and interpret this Consent Decree Judgment and Order.  The parties agree that if they or any of them seek Court enforcement of this Consent Decree Judgment and Order, any such enforcement will be by noticed motion, application or other appropriate request for an order for specific performance and that a contempt citation or decree will not be sought by any party.

18.  **Mutual Waiver and Release.**  Except as to the claims provided in paragraph 19, next, the Parties understand and expressly agree that this Agreement extends to any and all claims of every kind and nature whatsoever, known or unknown, suspected or unsuspected, past or present, disclosed or undisclosed, which the Parties may have against each other; thus, all rights under Section 1542 of the California Civil Code are hereby expressly waived by the Parties.  Such section reads as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

By initialing below, the Parties hereby waive the provisions of section 1542 solely in connection with the matters which are the subject of the foregoing waivers and releases.

Initials:

| _____ | _____ | _____ |
| JEAN RIKER | RONALD ALVERNAZ | CONSERVATOR |

19. **Claims Reserved from Release.** The provisions in paragraph 17 and 18, supra, shall not, however, affect plaintiff's outstanding claim for reasonable statutory attorney fees, litigation expenses and costs, including any available enhancement, which are specifically reserved for disposition by motion, as set forth below at paragraphs 31 through 34.

20. Nothing contained in this Consent Decree shall be admissible in evidence in any judicial, administrative, or other legal proceeding other than a proceeding for the breach of this Consent Decree, plaintiffs' motions for attorney's fees, and the pending probate petition described above to approve this settlement.

21. If any proceeding is brought to enforce or interpret any of the provisions of this Consent Decree, except as otherwise provided in paragraphs 31 through 34.

## INJUNCTIVE RELIEF

22. As a part of a compromise of global liability, the defendants agree that they have or will perform the following work to provide disabled access at the subject restaurant:

    I.  **MAIN ENTRANCE**

        **A.**  Defendants shall remediate the exterior landing at the main entrance so that no portion of it exceeds a slope of 2% in any direction.

        **B.**  Defendants have removed the doorstop located on base of front entrance.

        **C.**  Defendants shall install ISA Signage at the front entrance.

**D.**   Provide EXIT signs at each grade-level exterior exit.

## II.   TABLES AND COUNTERS

As a compromise against global liability and Title 24's requirement that all seating be accessible, defendants shall provide a total of four new dining tables located as follows: one (1) accessible table in the bar area; one (1) accessible table in the front dining room; one (1) accessible table in the rear dining room; and one (1) accessible table on the patio.  Such tables shall provide the minimum knee clearance required by code.  Pedestal type tables shall not be used for this purpose; four legged tables are preferred.  Each table shall be located along an accessible path of travel, centrally placed within each area, and be marked international symbol of accessibility.  Access shall be provided to permit disabled and disabled-companion seating on at least two sides of each table.  Such disabled seating areas shall not be situated within the general path of pedestrian travel.

## III.  PATH OF TRAVEL TO RESTROOM AND EMERGENCY EXITS

**A.**   As a part of compromise against global liability and plaintiff's demand that defendants provide a fully compliant path of travel to the 2 emergency exits, defendants shall perform the following remediations at the

rear emergency exit:

1)   The weather mat covering the interior ramp inside this exit shall either be removed, permanently affixed to the floor with carpet tape, or be substituted with another material that is fixed, low-pile, and non-slip.  As a part of this global compromise, defendants shall not be required to provide a level interior landing serving this emergency exit.

2)   In order to eliminate the existing 2 inch drop outside for the emergency exit at the rear of the restaurant, defendants shall install a new exterior landing that is level to the threshold within 1/4 inch, or 1/2 inch beveled, that is 60 inches in depth, that is level within 2 percent in all directions, and that leads to an accessible path of travel down to grade for purposes of seeking fire refuge.

3)   As a part of the global compromise, defendants shall not be required to provide an accessible means of vertical access to the separate emergency exit at the patio.

B.   As part of a compromise against global liability and plaintiff's demand that defendants provide a fully accessible path of travel from the dining area to the public restrooms, defendants agree to:

**1)** Install fully compliant handrail sections with returns at each wall-length along the ramp, excluding 2 existing doorways.

**2)** Provide a nonslip surface along the length of the ramp as previously discussed, supra; and

## IV. PATH OF TRAVEL TO OUTDOOR PATIO FACILITIES

As part of a compromise against global liability and plaintiff's demand that defendants provide a vertical means of disabled access and proper landing at the terrace door to the bar area, defendants shall:

**A.** Install ISA directional signage inside the Distillery indicating the accessible path of travel to the patio entrance.

**B.** Install ISA directional signage at Terrace door to the bar area indicating the location of the main entrance.

**C.** At the interior entrance to the patio, install a contrasting stripe on the top step to warn of the drop off condition. Defendants indicate that for the other tread on the interior step, they will voluntarily provide a contrasting stripe, and remove the non-affixed door mat, to provide compliant-access for the semi-ambulatory and visually impaired.

**D.** Provide operational lever hardware on the pull side of the second terrace gate.

**E.** Establish a written policy, and train all employees, to leave the terrace gate unlocked during business hours.

**F.** Provide a smooth, uninterrupted surface along the bottom 10 inches of the terrace patio gate (kick plate).

**G.** Establish a written policy, and train all employees, regarding the placement of tables and chairs, to thus create and maintain an unobstructed, interior landing at the terrace patio gate that is 60 inches deep and provides 24 inches of strike side clearance. Alternative to the creation of a new landing, defendants may provide utilize an automatic gate opener at this location.

**H.** At the terrace patio gate, provide a compliant exterior landing that is level within 2% in all directions, and stripe the parking near this area to prevent obstruction of the landing by parked vehicles.

**V.   RESTROOMS**

As a compromise against an admission of global liability and plaintiff's demand for full and equal access to each of the existing, separate-sex, public restroom facilities, defendants shall:

A.  Convert the existing women's public restroom (depicted at **Exhibit 1**) to a single-sex/disabled-unisex facility, and per the design prepared by plaintiff's access consultant and attached hereto at **Exhibit 2**, or another equivalent design meeting all current code specifications for new construction in relation to strike-edge clearance, turning radius, clear-floor space access to the toilet and lavatory, etc. As a part of this compromise, defendants shall not be required to modify the existing floor plan and fixture layout in the men's public restroom (depicted at **Exhibit 1**), which shall retain its current fixture count and designation as a single-sex facility. The parties acknowledge this work will require seeking a variance from the City of Sacramento under the Plumbing Code, i.e., to reduce the total number of fixtures.

B.  Provide a door latch at the converted restroom, and provide both Title 24 and ADA signage indicating the availability of the room for disabled unisex use.

C.  At the restroom doors, defendants have replaced the existing knob type hardware with lever hardware.

D.   Doorstop located on base of front entrance has been removed.

E.   Faucet handles in the women's restroom have been replaced with lever type hardware.

F.   Defendants will remount the existing Title 24 signage at each restroom entrance so that it is 60 inches on center above the finished floor (AFF).

G.   Defendants shall provide ADA signage at the strike edge of each restroom entrance that it is mounted 60 inches on center above the finished floor.

H.   Remove the trash receptacle obstructing the interior restroom landing of the women's restroom, and establish a policy, and train employees, to keep this landing area free and clear of obstructions.

I.   In the women's restroom, provide a compliant lavatory that its top surface mounted no more than 34" AFF and provides a minimum of 29" knee space at the front face and a minimum of 27" at 8" back from the front face of the lavatory.

J.   Remount the towel dispenser in the women's restroom so that its operating mechanism is 40 inches on center AFF.

K.   Remount the soap dispenser so that its operating mechanism or dispenser is no

higher than 40" AFF.

L.   The centerline of the toilet installed in the reconfigured women's restroom depicted at **Exhibit 2** shall be 18 inches, exactly.

M.   Compliantly mounted grab bars shall be provided for the accessible toilet in the reconfigured women's restroom depicted at **Exhibit 2**.

N.   The sanitary seat cover dispenser in the reconfigured women's restroom depicted at **Exhibit 2** shall be located so that the dispensing opening is no higher than 40" AFF and is adjacent to a 30" by 40" clear floor space.

O.   Defendants have or will replace the door leading to the men's public restroom to provide a clear opening of 32 inches minimum.

P.   Remove the two trash receptacles currently obstructing the interior restroom landing of the men's public restroom, and establish a policy, and train employees, to keep this landing area free and clear of obstructions.

Q.   Reposition the lavatory in the men's public restroom so that its centerline from the partition wall is 18 inches, exactly.

R.   Remount the mirror in the men's public

restroom so that it is no higher than 40"
AFF to the bottom of its reflective
surface.

## VI.  BAR AREA

**A.** Move vending machines currently located at
the end of the bar, to a location with a compliant clear
ground floor space that is connected to an accessible
route.

**B.** Move the ATM facility currently located
near the end of the bar, to a location with a compliant
clear ground floor space that is connected to an
accessible route.

23. **Performance Standards.** All of the foregoing
facilities specified in paragraph 22 shall be brought into full
and strict compliance with the performance standards for new
construction of the California Code of Regulations, Title 24-2
(2008), and Americans with Disabilities Act Accessibility
Guidelines, effective January 26, 1992, unless indicated
otherwise in the individual work items specified of paragraph
22, supra.

24. **Conflict in Performance Standards.** The parties
acknowledge that each of the architectural features specified
in paragraph 22 are regulated in near parallel fashion as
"barriers to disabled access" under both Title 24 and the
Americans with Disabilities Act Guidelines, and the
corresponding statutory remedies. However, in the event of a
conflict between the two sets of regulations identified in the

proceeding paragraph, the provisions that supply maximum protection and accessibility to the disabled shall apply.

25. **Option to Close Facilities.** In lieu of making modification to any particular facility or amenity called for by this decree, the defendants may choose to permanently close such facility or amenity from public use. Such facilities shall not be reopened for public use without provision of full disabled access pursuant to the terms of paragraph 22.

26. **Time for Compliance.** As to all work specified in paragraph 22, defendants shall submit plans and apply for any necessary permits for this work within 90 days of the entry of this Order on the docket of the court, and complete all such work within 120 days of receiving permits, allowing for good faith interruptions due to inclement weather, contractor unavailability, and other causes under the Doctrine of Force Majeure. Permits from the building department shall be secured for all work. Defendants will provide written notice regarding the status of completion within 220 days after entry of this Order.

27. **Noninterference.** To allow Defendants to complete this accessibility work without fear of being sued while correction work is underway, Plaintiff covenants and agrees as follows:

> a. Plaintiff will not bring, assist or encourage any governmental agency, corporation, or other form of entity or individual in bringing any proceeding or suit or in filing any administrative complaint or other claim against Defendants for any alleged access violations or

discrimination under Civil Code section 51 et. seq., Civil Code section 54 et. seq., the ADA, the ADAAG, Title 24 of the California Code of Regulations, or any other similar statutes, laws, ordinances, or regulations occurring in or about the Distillery, except for purposes of enforcement under this decree.

b.  Plaintiff will not take any action under Civil Code section 51 et. seq., Civil Code section 54 et. seq., the ADA, the ADAAG, Title 24 of the California Code of Regulations, or any other similar statutes, laws, ordinances, to document any alleged violations or discrimination or regulations occurring in or around the Distillery, except for purposes of enforcement under this decree.

28.  **Enforcement.** Should plaintiff in the future become aware of any facts or conditions relating to the subject restaurant that may give rise to a claim that Defendants have failed to comply with any of the injunctive relief provisions set forth herein, plaintiff shall, prior to seeking enforcement from this Court, provide notice to each of defendants' current counsel (addressed to then current addresses as registered with the State Bar), in writing, with courtesy copies addressed to each of the named defendants through Ronald Alvernaz at 2107 L Street, in Sacramento, California.  Defendants shall respond in writing within 20 days.  The response shall be addressed to plaintiff's counsel, Tim Thimesch of the Thimesch

Law Offices, at his then current address registered with the State Bar. The defendants shall have sixty (60) days, following receipt of plaintiff's notification to undertake to correct the alleged violation and/or respond to plaintiff's allegations. Plaintiff's counsel agrees to contribute pro bono up to three hours in any given calendar year toward these informal negotiation efforts. If plaintiff determines, in her own good faith discretion (as restricted by the good faith standards of Rule 11), that the matter(s) are not resolved by defendants' response, plaintiff shall be permitted to file a noticed motion under the current case number of this action seeking enforcement of this Consent Decree Judgment and Order. The prevailing party in such motion proceedings, whether in full or in part, may be entitled to an award of reasonable attorney fees, litigation expenses and costs for such motion, i.e., pursuant to the normal prevailing party standards that applied before entry of this decree under the Americans with Disabilities Act and Code of Civil Procedure §1021.5.

**STATUTORY DAMAGES:**

29. **Payment and Deadline.** Defendants agree to pay plaintiff the amount of $11,000 in full and final settlement and for any and all claims plaintiff may have including but not limited to satisfaction of her claims for bodily and/or personal injury and/or for the statutory damages applicable thereto, under Civil Code Sections 52 and 54.3. Should the conservator of defendant James Dunphy, Jr., obtain authorization from the Probate court to enter this settlement

pursuant to Paragraph 15, a check for this amount shall be made payable to "Jean Riker," and delivered into plaintiff counsel's hands within 21 days of such authorization from the Probate Court.  If overnight mail is used, defendants shall supply plaintiff's counsel with a tracking number.

30. **Limited Purpose.** The parties stipulate that the foregoing amount is intended to be paid in full to plaintiff, and understand that no part of it shall be received by plaintiff's counsel in compensation toward plaintiff's separate claim for reasonable statutory attorney fees, litigation expenses, and costs.

**RESERVED ISSUES RE CLAIM FOR REASONABLE INTERIM AND FINAL**

**STATUTORY ATTORNEY FEES, LITIGATION EXPENSES AND COSTS:**

31. **Interim and Final Claims.** Plaintiff's claims for interim and final reasonable statutory attorney fees, litigation expenses and costs, including any available enhancement shall hereafter be referred to collectively as "Claim for Interim Attorney Fees" and "Claim for Final Attorney Fees".

32. **Reservation for Motion.** The parties have not reached a settlement on the amount of plaintiff's Interim and Final Attorney Fee Claims, and reserve such issues for disposition through motion.

33. **Prevailing Party.** Notwithstanding any statement in this Decree regarding Defendants' dispute of the allegations and/or non-admission and denial of liability, the Parties agree that Plaintiff is the prevailing party on her claims for

injunctive relief and damages for purposes of making a motion for reasonable interim statutory attorney's fees, litigation expenses and costs. Defendants reserve the right to oppose the motion on all other grounds, including but not limited to, the reasonableness of fees, litigation expenses and costs.

34. **Procedure.** The parties agree to continue in their attempt to compromise such claims. Therefore, if the Court approves this Consent Decree and Order, and the parties fail to settle the Attorney Fee Claims, the deadline for plaintiff to file her motion seeking an award on her Claim for Final Attorney Fees shall be within 30 days after notice of entry of this consent decree, and on her Claim for Final Attorney Fees within 40 days of the parties certifying that all work has been completed at the subject property (as specified in paragraph 22 and 26). Plaintiff may move for an award of fees, costs and expenses together, which include reasonable attorney fees, litigation expenses and costs incurred in this action and in pursuing her motions (fees on fees), for monitoring and enforcing defendants compliance with the terms of injunctive relief (specified in paragraph 22), and for any reasonable enhancement, and defendants may state objections through their opposition papers. This deadline and procedure shall apply in lieu of the fee and cost procedures specified in Civil L.R. 54-292 through 54-293.

**ENTIRE CONSENT DECREE JUDGMENT AND ORDER:**

35. This Consent Decree Judgment and Order, and the motion procedures in paragraphs 31 through 34, constitute the

entire agreement between the parties on the matters of injunctive relief, and no other statement, promise, or agreement, either written or oral, made by any of the parties or agents of any of the parties, that is not contained in this written Consent Decree Judgment and Order, shall be enforceable regarding the matters described herein.

**CONSENT DECREE JUDGMENT AND ORDER BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

36. The parties agree and represent that they have entered into this Consent Decree Judgment and Order voluntarily, under no duress, and wholly upon their own judgment, belief, and knowledge as to all matters related to this Consent Decree Judgment and Order, after having received full advice from counsel.

37. This Consent Decree Judgment and Order shall be binding on Plaintiff JEAN RIKER, and Defendants DISTILLERY; RONALD ALVERNAZ; JAMES DUNPHY, JR.; and any successors in interest. During the period of this Consent Decree Judgment and Order, the parties have a duty to so notify all such successors in interest of the existence and terms of this Consent Decree Judgment and Order during the period of the Court's jurisdiction of this Consent Decree Judgment and Order.

**JOINT PREPARATION AND SEVERABILITY:**

38. This Consent Decree Judgment and Order is deemed jointly prepared by all parties and shall not be strictly construed against any party as its drafter. If any term of

this Consent Decree Judgment and Order is determined by any court to be unenforceable, the other terms of this Consent Decree Judgment and Order shall nonetheless remain in full force and effect, unless the entire intent of this agreement is precluded by said paragraph and/or paragraphs.

**SIGNATORIES BIND PARTIES:**

39.  Signatories on the behalf of the parties represent that they are authorized to bind the parties to this Consent Decree Judgment and Order.

**SIGNATORIES BIND PARTIES:**

40.  This Consent Decree Judgment and Order may be executed in counterpart signatures, and such signatures may be attached in counterparts, each of which shall be deemed an original, and which together shall constitute one and the same instrument. Such counterparts may be signed as faxed signatures, which shall have the same force and effect as

////

original signatures.

Dated: _____

_____
Plaintiff JEAN RIKER

Dated: _____

_____

Print Name: _____

Title: _____
As Conservator with Full Statutory
Authority, and on Behalf of,
JAMES DUNPHY, JR.

Dated: _____

_____
RONALD ALVERNAZ, on behalf of
himself and Defendant DISTILLERY

**APPROVED AS TO FORM:**

Dated: April __, 2009          THIMESCH LAW OFFICES
                               TIMOTHY S. THIMESCH, ESQ.
                               GENE A. FARBER, ESQ. – Of Counsel

                               _____
                               Attorneys for Plaintiff
                               JEAN RIKER

Dated: April __, 2009          PORTER │ SCOTT
                               A PROFESSIONAL CORPORATION
                               JENNIFER E. DUGGAN, ESQ.
                               KAYLA C. VILLA, ESQ

                               _____
                               Attorneys for Defendants
                               DISTILLERY; RONALD ALVERNAZ; and
                               JAMES DUNPHY, JR.

```
Dated: April __, 2009              WILCOXEN CALLAHAN MONTGOMERY &
                                        DEACON
                                   DAN WILCOXEN, ESQ.


                                   _____
                                   Attorneys for Defendants
                                   DISTILLERY; RONALD ALVERNAZ; and
                                   JAMES DUNPHY, JR.
```

<u>**ORDER**</u>

    Judgment shall be entered pursuant to the terms of the foregoing consent decree stipulated to on behalf of the parties to this litigation.

    IT IS SO ORDERED.

DATED: July 28, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE